to our humble abode this morning. We have a short docket, but we have to arrange a lot of, do a lot of cases that aren't on the docket. So we will appreciate your adhering to the time limits. Yellow light comes on, you have two minutes left. When the red light comes on, we ask you to stop talking unless you're answering a question from counsel. Also, we have read the briefs and record excerpts, but we really appreciate record citations when you're able to add those to your points. First case on the morning is Armstrong Executrix v. Ashley, number 21-30210, and we will hear first from Mr. Art. Good morning, Your Honors, and may it please the Court, my name is Steve Art, and I represent Andrea Armstrong and the estate of Glenn Ford. Glenn Ford has plausibly pleaded well-established due process claims in detail. His wrongful conviction case should never have been dismissed for failure to state a claim. No one disputes that Ford is innocent. State prosecutors vacated his criminal conviction, saying they had evidence that Ford was uninvolved in the crime and never should have been charged. Ford alleges in his pleadings that particular law enforcement officers hid specific items of exculpatory and impeachment evidence, including substantial evidence pointing to the real killers, and that they fabricated all of the scant evidence that implicated him in the crime, causing his wrongful conviction and 30-year imprisonment on death row. The issues in this appeal are narrow. The law enforcement defendants have not raised any... Wouldn't have thought they were narrow from looking at the briefs. A fair point, Your Honor. On the law enforcement due process claims, the issues are narrow. The law enforcement defendants do not raise any legal question about qualified immunity. They concede that the law governing the plaintiff's suppression and fabrication claims was clearly established at the time of the investigation in 1984 and the prosecution of Glenn Ford, and they concede that most of the elements of the suppression claims are plausibly pleaded. But for one, they contend that it is not plausibly pleaded that they suppressed the material exculpatory evidence they had in their possession from state prosecutors. That argument depends on a disbelief of the pleadings in the complaint and an appeal to evidence outside of the pleadings, which frankly does not support their position. Can I ask you about that last piece? So obviously there's been two different state court proceedings. There was the habeas proceedings, and then there were the wrongful conviction compensation proceedings. And in those proceedings, the state courts argued all sorts of facts that are radically inconsistent with the allegations in the complaint that you filed in federal court. And I'm curious how we are to reconcile that. If the state courts say there's overwhelming evidence of felony murder, for example, there's overwhelming evidence that Mr. Ford was the lookout, there's overwhelming evidence that he was hawking the jewelry and trying to hawk a gun, et cetera, et cetera, et cetera. Can you or your client come into federal court and allege facts diametrically opposite to those found by the state court? And if so, why? So a few points in response, Your Honor. First, there is no issue of fact preclusion or issue preclusion raised in this appeal to be answered by this court. On the question of are the facts diametrically opposed to what we are pleading, I would say that the answer is no. And for both the state habeas proceedings and the compensation proceeding, what happened is the record of the criminal case that was submitted and that was the cause of the conviction was the record on which those habeas issues and the state compensation issues were decided. The entire contention in the federal civil rights case is that those proceedings in state court were corrupted, that there was suppressed evidence that never came to light. In 1991, in the habeas proceedings, the plaintiff pointed to police reports that never came to light, contended that those were Brady evidence. The state courts rejected that claim, but there hasn't been an adjudication of what the facts of this murder case are with all of the evidence in play. And so our contention is you can come into federal court, you can plead facts, that you have a good faith basis to plead that evidence was suppressed and decided in prior proceedings. As a matter of the criminal proceedings and the state post-conviction proceedings that followed them, those in our, again it's not raised, but in our view would not have any preclusive effect because of the vacature of the conviction. There's no longer a judgment in state court that would have preclusive effect under Allen against, under that Supreme Court's Allen case. And the state compensation proceedings are not proceedings adjudicated on the same record that we have here. They're adjudicated on the criminal trial record, which we're contending is corrupted. They are adjudicated on a different legal standard. So we don't think there's anything about those state proceedings that prevents us from plausibly pleading claims that we have a good faith basis to plead in this case. And to the extent, there's a lot of argument in this case about whether the items in these police reports that were exculpatory or impeaching of the state's case in the criminal trial were disclosed. And, and the argument seems not an argument about whether the pleading the police officers withheld this material from state prosecutors is plausible. It's, it seems to be an argument that there's not a good faith basis to say that. And so I want to take the opportunity today to talk about, while we don't think it's appropriate to look outside of the record and refer to other materials to impeach allegations in the complaint, but to talk about what the good faith basis is for pleading that the law enforcement defendants didn't provide these particular police reports to state prosecutors. So, so first, criminal defense attorneys have sworn in affidavits that they never received any of these police reports. Fine. So the, they were either held, withheld by the police or by the prosecutor. There's no, there's, why would, you argued in your brief that somehow we're not supposed to take judicial notice of these police reports, but they referred to them, you referred to them. They are properly before the court, don't you think? Our legal position is that they should not properly be before the court at the pleading stage. The, the narrow exception to considering materials outside of the pleading is reserved for things attached to the complaint like a contract. Well, I understand that, but this went way beyond that in regard to the Rule 7 and the reply and all that business, didn't it? It's a fair point, Your Honor. I think that if there is going to be an adjudication about whether there are disputed facts about a particular issue material to the claim, due process claim stated in the case, then there has to be a summary judgment proceeding. Not necessarily. So, so. The, the judges ruled on the pleadings, whether you call that 12C or 12B6 at this point, I'm not sure, but it's clearly pleadings plus reports. I, I don't want to fight the point too hard on, on the legal point because I think that the facts that I'm about to set out will show that these, these reports, the facts outside of the records will show that these reports were not provided to prosecutors at all, at any stage of the case. But I think that there has to be some limit to the rule that you can consider materials outside of the complaint when they are central to the complaint. And I think the rule really is sort of embodied in Federal Rule of Evidence 201B2, which says you can take judicial notice of documents. For example, you could take judicial notice of a judgment in a criminal proceeding to decide whether, heck, barred the civil rights claim in federal court. But you can't take notice of disputed facts and, and agree. You're not disputing them. You're all agreeing that these are the reports. Absolutely, Your Honor. We agree that they're, they're, they're the reports. But the issue in the case is whether the reports were handed over to the prosecutors, not what the reports. I understand that. So move on and tell us about them. Okay. So there is ample evidence out there that these reports were not provided to prosecutors. Criminal defense attorneys swore in affidavits that they never received the reports or the suppressed information. That's in the record, um, at 2744 to 2747. Prosecutors said repeatedly that they never received these reports. In the motion to vacate the conviction in 2014, they said if they had known the information that they knew then, they, they might never have charged Glenn. Specifically, what, which are these specifically, which reports? So these are, these are all of the police reports. These, uh, what l 11 or 10 or 11 that you list in your brief? Yes, Your Honor. So these are the police reports that were recorded. How can you prosecute someone for capital murder without such background information? It is it is outlandish. We, we do not have any argument with their position that it is hard to believe that these reports weren't handed over to state prosecutors. But the fact that it is hard, hard to believe does not make it implausible. This is not a pie in the sky allegation that the attorney general of the United States intended to discriminate against someone or that you see parallel action among corporations and therefore they must be conclude, uh, uh, uh, conspiring together. This is a situation where you have a small team of eight investigators investigating a murder, a set of police reports that records on undeniably material exculpatory and impeachment facts like that. There are two prime suspects are the Robinson brothers and they're going after this, this person. Well, Marvella Brown was a girlfriend of one of the Robinson's, right? Right. And I want to let me also, how could they not know about the Robinson brothers? How could Glenn Ford not know about it? How could the prosecutors have closed their eyes about the Robinson? I mean, I think that the prosecutors did know about the Robinson brothers. The Robinson brothers were charged with this murder as well. They are ultimately released and, and, and let go. But the question is whether the police have discharged their duty to turn over the, the evidence that they have directly implicating those brothers in the murder to the prosecutors and the line level prosecutors in this criminal case say in repeated settings, we never received those reports or that information. So in addition to the motion to vacate, they testified in post conviction proceedings in 2004 that they'd not, not seen the reports when, when prosecutor shrimp was shown the alderman and Ashley, uh, report on Jeffrey Robinson and how the ways that Jeffrey implicated the Robinson brothers, he testified, quote, I looked for it on the first time, quote, I looked at it for the first time when you handed it to me here on the stand in 2004, they testified that as a practice, they would have given any evidence that they had to criminal defense attorneys as would be expected in a normal functioning criminal justice system. And the criminal defense attorneys again, didn't get those importantly in three stipulations agreed to by myself and Mr. Rabelais on my friend on the other side in this very case, all three line level prosecutors stipulated before being voluntarily dismissed that they did not have any knowledge of the allegations in the amended complaint about Shreveport police officers suppressing this information. Prosecutor Stroud's is in the district court at docket one 14 dash one. The other two are not in the record at this point in time, but, but in this very case, the prosecutors are saying, we didn't know about that evidence that you were pleading was suppressed in, in this wrongful conviction case. And in addition, prosecutor shroud made public statements after exoneration confirming that he did not know of the evidence that was suppressed by that we allege was suppressed by the police officers. Can we just talk about the allegation now? Cause I realized we're running out of time. I just want to make sure that we understand the allegation of the suppression. So I'm, I'm just looking at the first report. I gather these allegations are, and this is in the rule seven, eight reply. And this is basically the same for each one of these various reports that we've been talking about this morning. Defendants, Ashley Alderman, price Mitchell, Datcher Lockwood, Pittman and rushing knowingly and deliberately failed to provide these reports to Mr. Ford, his defense attorneys or prosecutors. So that's paragraph 63 and that's the entirety of the allegation. So it's, we have lots and lots of cases that say that this sort of allegation is conclusory, that there's, you have no specification about who did what, why we would think it's knowing and deliberate. What exactly, I mean, you say they failed to provide the reports to these three people, but how, when, where, what, why, like none of the normal things that Iqbal and Twombly requires allegations are, are put there. It's just the conclusion. So I want to be clear about the suppress, the dual suppression theory. Theory number one is that for example, in a police report where Alderman and Ashley record that the Robinson brothers are quote their two prime suspects or that, or where Datcher records in his reports, Sandra Nash picked Jake Robinson's photo in an ID that the, we are naming particular officers who, who suppress particular items of evidence in their own report. That is theory one. We, we have, we have pleaded specific officers who know specific facts, recorded in specific reports and then withhold those reports from the prosecution. In addition to that, this is a small investigating team of eight officers and our contention is as all of them are working on the case, they are familiar with the reports in the file and not one of them turns that evidence over to the state prosecutors. And so there's two theories and, and your point about group pleading is well taken. We think that this court could rule in this case that group pleading is impermissible and to the extent that we have pleaded that all of the police officers withheld all of the reports we lose, but there are specific allegations against particular police officers who put their names on these particular reports. And going back to Judge Jones's question, if you look at the reports that they cite in the record and they're, and they're in the record attached to the defendant's motion dismissed, but if you look at those, all those reports, the face of the reports themselves have boxes that say distributed to, and one of them says district attorney and every single one of those boxes is unchecked on every single one of these reports. These reports were not provided to state prosecutors in the case. That is the core of our due process claim. Um, I, I realize I'm running out of time on the other issues. I will stand on our briefs. This, well, I have a serious question. Um, you filed a 28 J about Thompson v. Clark. It does appear to me that, uh, you pled a constitutional malicious prosecution claim, which the fifth circuit did not recognize. Um, what are the elements of a fifth, of a constitutional malicious prosecution claim and who are the proper defendants? I, so the elements of a fourth amendment claim for seizure post due process without probable cause are just a seizure without probable cause where the defend, individual defendant has caused the, the judicial process that, that causes the seizure to issue. I think any other elements, and obviously this has been a fraught area, any other elements from common law malicious prosecution or have no place in a fourth amendment analysis. I think the defendants that are proper judge Jones would be the same defendants, uh, that, that, um, in a, in a state law malicious prosecution, we're responsible for commencing or continuing the prosecution. But I think that the life of that claim is tied to the life of the other due process claims in this particular case. Certainly. I don't understand that. That's a descriptive, not legal. I don't understand what you're saying to put it legally. We contend that we have plausibly alleged the fabrication of evidence that caused the criminal prosecution as a matter of due process violation. That allegation is the same one that would support a federal malicious prosecution claim under section 1983. And where is that specified in the Thompson case? I think what the Thompson case is saying is an allegation of, of fabrication or suppression of evidence that causes judicial process to issue. There was no indictment in the Thompson case, was there? I think it was just a criminal charge. I think there was a warrant, but no indictment. Right. So, so it's normally you say that the warrant breaks the chain unless it's been sullied. So I don't know. I think we're on new ground here. Agreed, Your Honor. And I think, I think that to the extent that there, that, that, that there are doctrines about judicial decision-making on a warrant or in a probable cause hearing, breaking the chain of causation, unless there is a deception of that judicial authority, those would apply to a, to a, the claim recognized in Thompson against Clark. I think here we are alleging that all of the evidence that gave rise to probable cause to prosecute was fabricated and that substantial evidence. Fabrication is not accurate as to many of your allegations, much less what either legally or factually, but I'll take that as a boilerplate. Your Honor. You allege suppression. You allege suppression is not the same as fabrication. Absolutely, Your Honor. Okay. That's all I'm saying. Okay. And at core, this is a suppression case. We think that the suppression allegations. I was just wondering if Thompson means that whenever the, the authorities arrest somebody and then let them go or prosecute them and then dismiss charges, that from now on the prosecutors are always potentially liable. I, I think the prosecutors will rarely be liable because of immunity doctrine. Well, okay. The, whoever the authorities are. I, I, there, there needs to be a good faith allegation that the Fourth Amendment has been violated in, in a case like that. So there needs to be some allegation that something that caused. Well, there's always going to be an allegation. Well, anyway, this is, that's not what I'm, that's not material here. So anyway, Thompson leaves a lot of things open. Agreed, Your Honor. Unless there are further questions, I'll reserve. Okay. Thank you. Mr. Byrd. Good morning. Good morning. Thank you. You know, if this were pled in a traditional way, we would be looking at five claims here. And it would, it would be the Marva Brown and Donnie Thomas fabrication claims against Ashley and Alderman. The everybody knew about Whirl Prince and didn't disclose it claim against all of them. And then the two claims against Lockwood. That's what we'd be focused on. Those are about 15 paragraphs of this. But unfortunately, the pleading formula that they've used and the evolution of it throughout this whole painful process to get here finally demonstrates what they're really complaining about with 99% of this, which is that every report generated a major criminal investigation by nine office, eight or nine officers was somehow not given to the DA without anybody noticing. And that they went to trial without a piece of paper. It is incredible. And I think the word is implausible. And absent some allegations that aren't made here, you can't make that leap. It is incredible. Now, what's troubling me, and I don't have time to address it with the record right here because I hear it just now, is all this extra judicial information allegedly disclosed by these DAs. The one thing in those five, four points that's correct is that Paul Lawrence, the lawyer, who was a civilian lawyer, and he was in my firm back then, who tried this, who said, I didn't get those reports. That's in there. That's in our, we included those materials. There's nothing in there where a DA said, I didn't get any reports. In fact, we, over objection, included the testimony of the two ADAs, Marty Stroud and Kerry Schimpf, who both said, we got reports. I know this is 20 years later. I'm not saying I remember. But we got reports from the police department. So it is really troubling to hear there is evidence that DAs said publicly they didn't get reports. It's not anywhere. You look at Marty Stroud's materials. He felt bad about this. He was the lead prosecutor, didn't do the material. And he regrets that this guy was convicted of that particular crime. He never said that. To suggest that anyone said this is not in the record. There's not a citation to it. And he admits that they're not in the citation. So that point leaves us with where we were. All we have is this bald allegation that they, and the pleading formula, and Judge, when you were describing it, it sounded like that the Cantu case, I remember from a few years ago, it sounds like a quotation, knowingly and willfully agreed to, and that one, it was to falsely identify a witness. And the court said, quote, that is a formulaic recitation of the elements and its conclusory. So every one of the allegations about these reports is the same. Officer did an investigation. Officer gathered information. Officer put it in a report. Officer agreed among all the officers that that was problem to have that information in a report. And then finally, they really don't even say that. They just say suppressed. There's not even a statement in the complaint that says something like, well, it was in the police file later, but it wasn't in the DA's file. There's not even some basic reference like that that maybe could create some kind of inference. Instead, they just added the words or prosecutor on in the face of the order to do the reply. So that, to me, has been the burden on the defense and judge. I apologize that the briefing is that heavy, but 90 percent of what we tried to do was to make sure that everybody agreed that the bulk of this was that one issue. And the fact that they used these boilerplate formulaic over and over and over and over, it kind of hid the fact that we really were only talking about the five claims I talked about, plus the entire police record is missing. Well, don't you think the Supreme Court has thrown malicious prosecution into the mix? If there were different pleadings here, there would be an issue. Well, what are the elements of constitutional malicious prosecution? You've got to, according to what I just read in the last couple of days, it's a lack of probable cause and an initiation of the criminal proceedings by whatever the defendant is that you're talking about. And I think that this Court's direction on how to deal with an arrest under a warrant, a prosecution under a warrant, a prosecution under a grand jury, you go excise out the false information and you say, did that person cause this person to be surprised? I mean, it does add a little more mud to the water. Well, I think it's a very troubling decision in a number of ways, but the fact that they vitiated his conviction means there was a lack of probable cause, doesn't it? That's right. That, to me, is one of the critical elements. So that's one of the elements that's fulfilled. And the second one is, how did this defendant, whoever it may be, cause the prosecution to occur? In this case, there's no allegation about a warrant. There's no— Well, that's why I asked who's the proper defendant. Is it the DA's office? Is it the police? You know, the Thompson case itself was not one that went to a grand jury and got indicted and so on. Well, I think it could be several different ones. Well, if there was a lack of probable cause, doesn't that start with the law enforcement? If that was the charging document that led to this, I think that's what you would look at. And then you would excise out the part that caused the problem from this particular officer and say, did he cause the unlawful prosecution of this person? Or could it be the arresting officer if there wasn't a charging instrument? Would it be the DA on the electing to proceed? I think those are probably all possibilities. When I said, if you had a different pleading, I'm talking about our case, where there's no such allegation of any of these guys initiating a prosecution or writing a warrant. Well, they arrested him for selling stolen merchandise. That's the only reference. And there was probably probable cause for that, so that's not really an issue, but— That's exactly why I was saying that this pleading isn't there for this. But they continued to hold him. They did. And then the charging instrument came later, and there was an arrest affidavit. I mean, you know, does Thompson mean there's no claim at all if somebody, if something goes to the grand jury and then there's a conviction that gets expunged? I think that we're—I guess we're spoiled because we never had to really address it here in this circuit, but I think the intermediary doctrine is going to be a critical part of that. I don't think Justice Kavanaugh says anything about intermediary, and I didn't review Alito's dissent last night, so I'm not sure about that, but— I think he included that reference in the dissent, if I remember right, as one of the reasons that he's not really clear what we're opening ourselves up to is what I think was my takeaway. But for our purposes, I think that this is really a non-issue because whatever they created, the pleadings here haven't gone there. So if I could, the first issue I think we need to realize is all of this paper that we've provided you was meant to make sure that you're comfortable that there really is only six claims. One is the police record disappeared, and for purposes of the habeas record, I mean, they're talking about—I mean, there's testimony talking about these reports. It's disingenuous to say that there's a record that it didn't happen. I mean, to me, that's what's incredible. I mean, those reports were in the prosecution file. Is that what you're saying? Correct. I mean, and they're talking about it with witnesses. So how were they suppressed if the prosecutors had them in their file? For my purposes, I don't doubt the prosecutor. I mean, Paul Lawrence, I wouldn't doubt his affidavit where he says, I didn't get them. Why was there all this stuff in the briefs about it's under seal as to why he was—why the charges were dropped against him? In all candor, I'm not sure where they're—they've been saying that from the get-go, and I don't understand that. There was a witness that had some involvement, maybe one of the Robinson brothers. I'm not sure exactly who it was that caused the DA to do this. But there was a witness who— One of the Robinson brothers confessed. That's all we know. And that's all that has been disclosed by the DA. And that's not even referenced in specific terms in the complaint. They just say, this is an incredible case because the DA won't tell us why they did this, which they really—they did. It was that simple. It wasn't much to it. So if I could, just the other claims, the ones that we would have been here for, Marvella Brown and Donnie Thomas. Now, for Donnie Thomas, that one's easy. All they say about Donnie Thomas in the complaint is, officers caused him to implicate Ford. Quote, implicate Ford. Where was that? Was that in a PE? Was that in a trial? Was that in a piece of paper? There's lots of testimony about all that in the habeas, if you're interested. It's a recorded statement. But what was—how was it used? How in the world did that cause anything? The other one that Marvella Brown is obviously a more significant one, but real quickly, the Chandra Nash one. They say, one or more officers caused Chandra Nash to say at trial that she saw Ford. Okay, that's all we hear in the complaint about that. In the reply, they said, there's not a standalone Chandra Nash claim here. It's just part of the overall due process claim against all the officers. You'll see that in the reply. And then this week, they say, look at this case, this weary case. It's exactly like the claim against Chandra Nash. But of course, the weary case that they're referencing had incredibly detailed allegations about how they did it. What was this information that they provided to the witness? What was this tactic they used? They had a juvenile, and they misrepresented facts about the lineup. The weary case is another example of how this is not pled. And I would add it to the list of the 10 cases that I referenced in brief, where they were able to plead this kind of claim. Not a, the entire police record disappeared kind of thing, or whatever this is. So with respect to Marvella Brown, real quick, certain aspects that we're not going to share with you were fed to her. That's it. We don't get to hear where it was used, why it's material. All the things about Brady, they just pass over. It's a brief reference. And I think part of the claim is, well, all of that was described in a police report that we didn't get. Maybe so. As I said, we don't doubt that Paul Lawrence didn't get those reports. But it's a far cry to say, well, the police report had all that in there, and you'd be able to see what was material and all. But we didn't get that at the time. And therefore, we're going to sue all eight of these officers, because they're all acting as a group here, under the Cantu kind of prohibited allegation. So that's the problem with the Marvella Brown. Now, real quickly . . . Obviously, something that was exculpatory does not appear to have been turned over to the defense. We don't dispute that. I mean, today, we look at this and think, how would they not give them all this information? I mean, it would be helpful. Well, you don't have an open file. You don't have to have an open file. But you do have to turn over exculpatory or impeachment evidence. And it just seems . . . Who's the defendant in a case like that? Well, if we didn't have absolute immunity, we would not be . . . They wouldn't have to go this far with it, and we'd be looking at the prosecutors. So this is obviously an evolution, I guess, of just any of these. But just real quickly, the last real claim was the Lockwood claim. And that's the fingerprint. Yeah. Well, this isn't a DNA test done back in a lab and they write the report. Or it's not a coroner writing up a death certificate and monkeying around with it and then trying to shield that by testifying. This is . . . What's this? That's a print. What does that . . . What kind of print is that? Oh, that's a world print. He's saying that as he's sitting in the chair in the courtroom. That's testimonial. That's not a non-testimonial analysis that's being addressed. To say that Lockwood is not entitled to immunity because it's testimonial ignores the reality of what we're talking about. What kind of print . . . Remind me, which of these police officers testified at trial, if any? I'm not as conversant as my associate would have been on that. Several did. I know Don Ashley testified. I know that Lockwood testified. Right. There were several. Probably most at some point. It's quite a voluminous record. The only one that the testimony has any significance is that Lockwood testimony. And then finally, the last issue on Lockwood, before I lose my time, is the fingerprint preservation. You've got to agree that there's qualified immunity. If they say, gosh, you should have photographed it instead of put a piece of tape on it or do whatever they did, the chemicals, eventually the print disappeared. That's got to be a qualified immunity issue. Even if you could say that's a bad faith. So I think Lockwood needs to be dismissed as well. And thank you for your attention. Okay. Thank you. Ms. Rabelais? Good morning, Your Honors. May it please the Court, Joy Rabelais. I'm here for the estate of George McCormick and Cattle Parish District Attorney James Stewart. I'd like to answer a couple of the questions that the Court has raised. Judge Oldham, with regards to the overwhelming evidence of felony murder and all the facts that are in the public record that are diametrically opposed, I think that the Court can use the evidence, with regards to video evidence, even on a 12B, to say, are we going to give the presumption of truth to allegations when the public record and or video clearly undermines what's being pledged? And I would think that Scott v. Harris would be a logical extension to say that in a case like this, with the allegations, especially against Dr. McCormick, that he, quote, unquote, fabricated, suppressed, and or destroyed evidence. Well, of course, in Scott v. Harris, the video is in the file, right, which is the big distinction and the reason this is tricky, is that if the dash cam video in Scott v. Harris is in the case file, then you don't need judicial notice to wonder whether and to what extent the allegations are true. You can just look at the video. It's different when we have rules, there are rules in the Federal Rules of Civil Procedure that impose obligations on the plaintiff to have a good faith basis. Rule 8, Rule 11, both require the plaintiff to have some basis for the allegations. I'm not sure, I'm just not exactly sure what doctrinal bucket would all this fits in to understand when they can allege things that the state court at least found to be false. Correct, and Your Honor, it's certainly correct that Rule 8 and Rule 11 puts those obligations on plaintiff's counsel to know what facts are out there and not to make spurious claims in complaints, especially when there's sworn testimony, rulings, decisions, and all these things that are out there. But I do think it was appropriate for Judge Hicks to look at these items in the public record because these things are referenced. It was referenced that these things were withheld. It was referenced that these things were suppressed. It was referenced. So when you make the allegation, you make these things part of your complaint. So I think that matters of public record are appropriate to be pulled in and viewed and considered. Judge Jones, with respect to your question as to why the information to vacate was kept under seal, I'd like to refer the court. It is in Document 62 of the habeas proceeding where it says that the filings that were placed under seal indicated that Jake Robinson confessed to an informant of the Caddo Power Sheriff's Office that he had shot and killed Mr. Roseman. Why does that get put under seal? Because it was a confidential informant of the Sheriff's Office. Oh, a CI. I'm sorry. I thought Robinson himself. Oh, that's right. It was a confidential informant. Jailhouse informant. It was a confidential informant who came forward. That's why it was placed under seal. Right, right. And with regards to your Honor's questions about what does a federal malicious prosecution claim look like and who do you bring it against? If we're going to use the majority's opinion in that and say it looks like the state law which to me is an adequate remedy in and of itself, you have to have malice. You have to have intent. But I don't think that that is going to be a claim that's ever brought against a state's witness. This is the big problem. The Fourth Amendment has not been interpreted to require a malicious intent. And Justice Alito's dissent covers that. Exactly. His dissent really bears that out. The problematic nature of the ruling by trying to fit the malicious prosecution as a square peg into the round hole of the Fourth Amendment because the claims do not sufficiently overlap. Well, they all, the, Mr. Art suggests that it's, that you don't really have to do that. That it's just that the, there was a seizure without probable cause and the action of a defendant to be seized. And I'm not sure that the majority of the court in Thompson is requiring some kind of malicious intent. So. It's problematic. The ruling is going to spur much more litigation, unfortunately. With regards to the claims against Dr. McCormick, everything that he did in this case was post indictment. There's the one allegation that he participated in the investigation, and that's in Paragraph 17 of the amended complaint. There are no facts that say what he did that was investigatory in nature without that absolute witness immunity applies to Dr. McCormick. Thank you for your time. Okay. Thank you, Mr. Art. Rebuttal. Thank you, Your Honors. I want to respond to the contention that there is evidence in the record that prosecutors received the police files that we say is suppressed. Notably absent from the briefs and the argument is reference to any evidence that they, that prosecutors received these materials at the time of the criminal trial. These. I thought the, I thought the whole point of this in the habeas proceeding was that the prosecution file was turned over to the, maybe I'm misunderstanding, whole prosecution file was turned over to the court and those officers' reports were in that file. Let me be perfectly clear about what happened. In 1991, there was a public records request sent by Glenn Ford's post-conviction counsel to the Shreveport Police Department that said, give us your whole file. There was no privilege to assert because the criminal prosecution was over. From that public records request directly from the Shreveport Police Department came the file that then got attached to this criminal defense affidavit saying, here are all these reports that we never saw. It was not in the prosecution's file. Ultimately, everything was in the prosecution's file as the post-conviction investigation proceeded. But that was a public records request to the Shreveport Police Department. And if we were at summary judgment, I would have witnesses talking about this. I would have all of this evidence in the record to say, you guys didn't hand that stuff over to prosecutors at any point in time. And again, he said I didn't cite anything. I'm citing the district court docket in this case, 114-1. This is a stipulation signed by Ms. Ravele and myself from Prosecutor Stroud. We have one from Shrimp. We have one from Carmouche where they say, we've looked at your First Amendment complaint and all of the allegations that these police reports were suppressed and we don't know anything about that happening. If that's not enough. Well, where did that, I mean, is that in the record before the district court? Yes. Or are you just offering it de novo up here? It's in docket 114-1. So we put that stipulation in when we voluntarily dismissed those individual prosecutors who disclaimed any knowledge of the case. We put the criminal defense affidavit in. And our contention all along has been, it's enough to say the prosecutors did not receive this information. What a suppression of evidence, a withholding from prosecutors is an absence of action. It's hard to imagine what else we could possibly plead. But if the court is going to establish a rule that we need to plead exactly all of the reasons that we know that the prosecutor didn't get it at the pleading stage, that's fine. But we would like the opportunity to plead all of the detail that I've described today. And again, I'm surprised by that. I thought you were going to say we couldn't create that rule. Judge Hicks gave you a chance. I mean, he said, look, this is obviously going to be a problem. I'm entertaining 12C motions. But I'm going to give you a rule 7A reply. And you had a chance to do it. And you didn't allege those things. Most of them. No, please. I'm sorry. Go ahead. There was no indication. So what happens is they answer the complaint. A 12B6 motion is denied as untimely as because there are factual disputes and because the district court, in broad terms, says the claims are plausibly stated. Then years later, we get a 12C motion that doesn't raise legal issues, raise factual issues. And the district court says, I'm going to entertain this. I want a rule 7A reply. What I see in this complaint, the amended complaint now, is Armstrong allegations, Ashley allegations, and Lockwood allegations. I don't see allegations against the other defendants. Be clear about what each particular defendant did. We said, we understand. We provided that information. What we did not know is that there was some deficiency in the pleading that these police reports that we were talking about were withheld. And your honor, I don't think that there is a deficiency, to be clear. I think pleading that they are withheld is all one can plead. So what you're trying to suggest is that if we look at your allegations together with FOIA to the Shreveport Police Department, and if we see that those police reports were authored by particular defendants, you put that all together and that support is sufficient to carry you to further discovery. That is the core of the good faith basis to allege that those particular officers knew  And prosecutors, again, have been clear repeatedly at multiple stages that they never received these files. Glenn Ford was wrongly convicted. He was sentenced to death. He spent 30 years on death row. He died shortly after his release. Throughout his criminal proceedings, he was deprived of essential exculpatory evidence pointing to two men who actually committed the killing. Those men were set free. They killed again. This case is a case that deserves development past the pleading stage. The pleadings are sufficient, and we would ask this court to reverse. Thank you, Your Honors. All righty. Thank you.